**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION**

**MELISSA MEGAN DELOE,**

　　**Plaintiff,**

**vs.**　　　　　　　　　　　　　　**Case No.  1:16cv370-WTH/CAS**

**NANCY A. BERRYHILL, Acting
Commissioner of the Social Security
Administration,**

　　**Defendant.**

_____/

## REPORT AND RECOMMENDATION

This is a Social Security case referred to the undersigned United States Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636(b) and Local Rule 72.2(D).  It is now before the Court pursuant to 42 U.S.C. § 405(g) for review of the final determination of the Acting Commissioner (Commissioner) of the Social Security Administration (SSA) denying Plaintiff's Title II application for period of disability and Disability Insurance Benefits (DIB) and Title XVI application for Supplemental Security Income (SSI).  After careful consideration of the entire record, it is respectfully recommended that the decision of the Commissioner be affirmed.

## I. Procedural History and Facts

Plaintiff Melissa M. Deloe applied for a period of disability, disability insurance benefits, and Supplemental Security Income on August 17, 2011, alleging that the disability commenced on May 25, 2010.  Tr. 229-36, 282.[1] The applications were initially denied on November 30, 2011, and on reconsideration, on May 21, 2012.  Tr. 103-06.  A hearing was held on November 4, 2013, before Administrative Law Judge (ALJ) T. Patrick Hannon, at which Plaintiff was represented by a non-attorney representative.  Tr. 90-101.  An unfavorable decision was issued on December 19, 2013.  Tr. 110.  In that decision, the ALJ found that the Plaintiff had severe impairments, including osteoarthritis of the bilateral hips; osteoarthritis of the bilateral knees with a lateral meniscus tear and lateral compartment arthritis of the left knee; degenerative disc disease of the lumbar spine, status post L3 laminectomy and discectomy with bilateral L3 foraminotomies in 2010; asthma; hypertension; obstructive sleep apnea; and morbid obesity after gastric banding surgery in 2012.  Tr. 112-13.  The ALJ in the December 19, 2013, decision also found that Plaintiff had the residual functional capacity (RFC) to perform sedentary work with certain

---

[1] Citations to the transcript/administrative record (ECF No. 9, 9-1 through 9-23) shall be by the symbol "Tr." followed by a page number that appears in the lower right corner of each page.

exceptions, and within that RFC she was capable of performing past relevant work as a telemarketer.  Tr. 113, 117.

Plaintiff requested review by the Appeals Council, which was granted on May 1, 2015.  Tr. 125.  The Appeals Council vacated the ALJ's decision and remanded for a supplemental hearing before an ALJ.  Tr. 125-128.  The issues remanded for resolution involved whether Plaintiff could perform her past work as a telemarketer and the Plaintiff's maximum residual functional capacity.  Tr. 126-27.  The ALJ was directed to obtain supplemental evidence from a vocational expert to clarify the demands of any past relevant work and/or the effect of the assessed limitations on the Plaintiff's occupational base.  Tr. 127.  The order also stated, "Further, before relying on the vocational expert evidence the Administrative Law Judge will identify and resolve any conflicts between the occupational evidence provided by the vocational expert and information in the Dictionary of Occupational Titles (DOT) and its companion publication, The Selected Characteristics of Occupations (Social Security Ruling 00-4p)." *Id.*

A supplemental (video) hearing was held on September 4, 2015, before Administrative Law Judge Guy Koster at which Plaintiff was represented by Francisco Gonzalez, an attorney.  Tr. 31-77.  On November

20, 2015, a decision was entered denying Plaintiff's applications. Tr. 10-23. The Appeals Council denied review on October 18, 2015, Tr. 1-3, and Plaintiff retained counsel and filed this complaint for judicial review pursuant to 43 U.S.C. §§ 405 and 1383(c)(3). *See* ECF No. 1.

## II. Findings of the ALJ

In the decision issued on December 19, 2015, after remand by the Appeals Council, the ALJ made findings pertinent to this review:

1. "**The claimant meets the insured status requirements of the Social Security Act through March 31, 2014.**" Tr. 12.

2. "**The claimant has not engaged in substantial gainful activity since May 25, 2010, the alleged onset date (20 CFR 404.1571 et seq., and 416.971 et seq.).**" Tr. 12.

3. "**The claimant has the following severe impairments: lumbar degenerative disc disease status post (s/p) laminectomy; osteoarthritis of the bilateral hips; osteoarthritis of bilateral knees; and morbid obesity s/p gastric banding (20 CFR 404.1520(c) and 416.920(c)).**" Tr. 13.

4. "**The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926.**" Tr. 14.

5. "**After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary to some light work as defined in 20 CFR 404.1567(a) and 416.967(a) with limitations.**" Tr. 14. The limitations included lift up to 50 pounds occasionally and 20 pounds frequently; carry only up to 20 pounds occasionally; sit for up to 6 hours and stand or walk up to 1 hour each in a normal workday with normal breaks; requires sit/stand option to adjust or alternate position every hour for 10 minutes; avoid climbing ladders, ropes, scaffolds;

rarely balance, stoop, kneel, crouch, crawl or climb ramps/stairs; avoid even moderate exposure to work hazards such as unprotected heights and dangerous machinery; avoid concentrated exposure to extreme temperatures, wetness, humidity, vibrations, pulmonary irritants and poor ventilation; limited to only occasional use of foot controls; and no more than frequent operation of motor vehicles. Tr. 14.

6. "**The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).**" Tr. 20. The past relevant work which Plaintiff was unable to perform was identified as "Pantry Goods Maker," semi-skilled skill level. Tr. 21.

7. "**The claimant was born on February 7, 1980 and was 30 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).**" Tr. 21.

8. "**The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).**" Tr. 21.

9. "**Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).**" Tr. 21.

10. "**Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).**" Tr. 21. Based on the testimony of the vocational expert the ALJ determined that the claimant is able to perform the requirements of the representative occupations of: Document Preparer, D.O.T. #249.587-018, Sedentary Unskilled, SVP 2, with 45,000 such jobs available in the national economy; Surveillance Systems Monitor, D.O.T. #379.367-010, Sedentary Unskilled, SVP 2, with 33,000 such jobs available in the national economy; Charge Account Clerk, D.O.T. #205.367-014, Sedentary Unskilled, SVP 2, with 18,000 such jobs available in the national economy; and Cashier

II, D.O.T. #211.462-010, Light Unskilled, SVP 2, with 185,000 such jobs available in the economy.  Tr. 22.

11. "**The claimant has not been under a disability, as defined in the Social Security Act, from May 25, 2010, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).**" Tr. 22.

Plaintiff contends that substantial evidence does not support the ALJ's residual functional capacity finding in that no examining or treating physician stated that Plaintiff could sit more than six hours a day and stand and walk more than an hour a day and that the ALJ's findings violate Social Security Ruling (SSR) 02-1P and the subjective pain standard of the Eleventh Circuit Court of Appeals.  ECF No. 17 at 36.

## III. Relevant Medical[2] and Other Evidence

### A. Hearing testimony

At the hearing held on September 4, 2015, Plaintiff testified that she was unable to work due to inability to sit or stand for long periods of time. Tr. 38.  On a good day, she said, she could stand about six minutes before her back would begin pulsating with pain.  Tr. 39.  She said that on bad days, her back would be "locked up" so bad that she cannot even go to the restroom without crying.  *Id.*  Plaintiff testified that sitting is difficult because

---

[2] The recitation of medical evidence is based on the court's independent review of the record.  The synopsis of medical evidence will be supplemented as necessary in the Analysis section.

the end of her spine is deteriorating, which is very painful, and that she has muscle spasms. *Id.* If she is sitting, she needs to get up after about five minutes and can stand for maybe 15 to 20 minutes depending on how much she is able to move around in that space. *Id.* Plaintiff uses a prescribed cane. Tr. 40.

When asked about her meniscal tears and bone spurs in both knees, she testified that the damage had not been repaired because her doctors indicated it would not take the pain away, and that the doctors' decision on knee replacement was "up in the air" because of her weight and age. Tr. 41, 52. She had a gastric band put on in 2012 to help reduce her weight and has lost 100 pounds, weighting 280 pounds at the time of the hearing. Tr. 41-42.

Plaintiff testified she has gotten worse since the last hearing in 2013, where she testified that she was lying down 18 to 20 hours a day and, on a good day, could not dust, sweep, or mop. Tr. 42-43. On a bad day, she testified, she has throbbing pain in her back and cannot stand up straight. Tr. 44. Her back is locked up and will not unlock. *Id.* She testified that she had been working with vocational rehabilitation for seven years but they were going to release her because no matter how hard they try, she has not gotten to the point that she could work consistently. Tr. 44, 50. She did

have back surgery in 2010 and subsequent physical therapy, but the physical therapy was unbearable and was not helpful.  Tr. 51-52.

Plaintiff was asked about any other conditions, and she stated she has had a recurring umbilical cyst and a recurring perforated ear drum.  Tr. 53-54.  She has suffered a fall in 2014 which affected her back, neck, and ankle when her knees went "out" while walking down some steps.  Tr. 54-55.

Plaintiff said she has been in pain management for almost seven years and was currently on Dilaudid and on Valium for spasms, and was going to start use of a Fentanyl patch.  Tr. 45-46.  Several MRIs were scheduled and the record was left open for the additional records.  Tr. 47.  Plaintiff testified that her medications cause dizziness and grogginess similar to a "mental fog," with difficulty in concentrating.  Tr. 49-50.

Plaintiff described a current "good day" as one in which she can take a shower in her walk-in shower with a seat.  Tr. 55.  She said she cannot step into the shower on a bad day.  Tr. 56.  On a good day, she will sit in the recliner or lie down.  She reads, watches the birds, looks at the internet or is driven to her several doctor's appointments a week.  Tr. 56.  She testified that sitting in a recliner causes less pain than sitting in a regular chair.  Tr. 57.  She said she needs help dressing and has her food brought

to her most days because her back locks up so frequently.  Tr. 62.  She estimated that three or four days a week are bad days all day long.  Tr. 63.

Plaintiff testified that she no longer does any cooking, cleaning, or laundry because her back and knees do not allow it.  Tr. 59.  She does not grocery shop or go out to visit friends.  She has had to stop her volunteer work due to the pain.  Tr. 59.  She formerly volunteered at Interfaith Hospitality Network about once a month but has not done that since before 2011.  Tr. 59-60.  When she tried working out with weights at the gym, it was not successful because her back "locked up" for four days.  Tr. 60. She tried water exercises but that also caused back and knee problems afterward.  Tr. 60-61.

Paul Dolan, vocational consultant, testified that Plaintiff's past relevant work as pantry good maker, DOT #317.684-014, SVP of 4, was semi-skilled and had an exertional level of medium as performed.  Tr. 66. Dolan was asked a hypothetical question assuming a person with Plaintiff's age, education, and past relevant work, who is limited to light exertional level and unable to climb ladders, ropes, or scaffolds, only occasionally balance, stoop, kneel, crouch, crawl or climb ramps and stairs, and who must avoid a list of named hazards.  Tr. 68.  The vocational expert testified that such a person "would be able to return to work as a pantry goods

maker as defined, not as performed." Tr. 69. The vocational expert testified that a person with that hypothetical RFC could perform certain other jobs as well. Tr. 69.

The vocational expert was given a second hypothetical question with limitations including sitting limited to up to six hours in an eight-hour day, and standing and walking one hour each in an eight-hour day, requiring a sit/stand option at least every hour for ten minutes, and with certain lifting and carrying limitations. Tr. 69-70. A third hypothetical added the limitations of rarely balancing, stooping, kneeling, crouching, and crawling.

The vocational expert testified that such an individual would not be able to perform the past work of pantry goods maker but could perform the jobs of document preparer, DOT #249.587-018, SVP of 2, unskilled, exertional level sedentary, with approximately 45,000 jobs in the national economy; surveillance systems monitor, DOT #349.367-010, SVP of 2, unskilled, exertional level sedentary, with approximately 33,000 jobs in the national economy; charge account clerk, DOT #205.367-014, SVP of 2, unskilled, exertional level sedentary, with approximately 18,000 jobs in the national economy; and cashier II, DOT 3211.462-010, SVP of 2, unskilled, exertional level light, with approximately 185,000 jobs in the national economy. Tr. 70-72.

When presented with hypothetical number four, in which the individual was likely to require frequent breaks lasting 30 minutes or more and who would be off task at least 25% during a workday, or who might be absent at least four or more days a month, the vocational expert testified that the person would not be able to perform any work at a competitive level.  Tr. 72-73.

### B. Medical Evidence.

On January 17, 2008, on referral by Dr. Ronald Jones, M.D., for chronic pain in her left thigh and hip, and left lower back, which started after a fall in October 2006, Plaintiff saw YiLi Zhou, M.D., Ph.D., of Comprehensive Pain Management of North Florida.  Tr. 367.  Plaintiff reported that her chronic lower back pain was made worse by sitting, standing, and lifting.  *Id.*  On May 25, 2010, Dr. Donald Trimble, D.O., of The Orthopaedic Institute performed L3 laminectomy and discectomy with bilateral L3 foraminotomies on Plaintiff.  Tr. 382.  Notes from a July 26, 2010, follow-up visit at the The Orthopaedic Institute indicate that Plaintiff reported continued low back pain and muscle spasms, and left leg pain, which seems to be "aggravated by any position too long."  Tr. 400.  August 16, 2010, and August 23, 2010, visits to The Orthopaedic Institute showed reports of increased left leg pain "the same as it was before the surgery."

Tr. 396, 397.  Office notes for August 23, 2010, indicate Plaintiff could arise easily from sitting to standing.  Tr. 396.

Plaintiff saw D. David Wooley, P.A.-C, of The Orthopaedic Institute on September 27, 2010, for evaluation and follow-up after a post-operative lumbar spine MRI at which time she reported constant left buttock and lateral thigh pain unchanged from surgery.  Tr. 395.  She also reported tailbone pain when sitting for more than 20 minutes.  *Id.*  A December 9, 2010, evaluation post op from her L3 laminectomy indicated that Plaintiff had been going to physical therapy and believed it was helping with the back pain, which was still present, along with left leg pain.  Tr. 392.

On December 22, 2010, Dr. Mark Petty, M.D., of The Orthopaedic Institute saw Plaintiff after referral for an MRI on her left knee and noted a tear in the anterior horn of the lateral meniscus.  Tr. 391.  He noted tenderness but "good motion" and good stability to varus and valgus stress. *Id.*  Dr. Petty diagnosed left knee pain from insertional patellar tendonitis and patellofemoral pain, with minor symptoms from her anterior horn lateral meniscal tear.  *Id.*

After a psychosocial evaluation by Jeff Gedney, PsyD, at Integrated Psychological Services on March 17, 2011, to determine suitability for weight loss surgery, his report indicates that typical obesity and pain

related limitations were present, including difficulty bending, dressing her lower extremity, getting up from a low position, and fatigue, but "[d]espite these difficulties she is adequately capable of performing all necessary self-care and day-to-day functions."  Tr. 463.

Plaintiff was referred to the University of Florida Pain and Spine Center and saw Dr. Robert Hurley, M.D., Ph.D., on July 19, 2011.  Tr. 466. That report indicates that Plaintiff had continued back pain and severe leg pain.  *Id.*  Plaintiff was reported to have antalgic gait and a straight leg test was negative bilaterally with pain on extension and rotation.  Tr. 469.  She was diagnosed with postlaminectomy syndrome, lumbar region; lumbosacral spondylosis without mylopathy; sacroiliitis and left thigh meralgia paresthetica.  *Id.*  Plaintiff reported that the pain is constant and is made worse by sitting, standing, walking, and exercise.  Tr. 466.  The report indicated that Plaintiff would be best treated with a multidisciplinary approach that involves increased physical activity and judicious use of pain medications.  *Id.*  Lateral femoral cutaneous nerve injection on the left was recommended and lumbar medial branch blocks were to be performed.  Tr. 470.

Plaintiff began medical care at Archer Family Health Care in 2009 and continued to be seen there for several more years.  Tr. 472-498; 672-

703.  During her visits in 2010-2013, she continued to report knee pain,

chronic back pain, weight-related issues, sleep disorder, and a number of

other health problems.

An MRI of the left knee performed on November 11, 2011, revealed a

tear of the anterior horn of the lateral meniscus, degenerative fraying of the

body of the lateral meniscus, progression degenerative change involving

the lateral compartment with reactive edema with grade III and IV

chondromalacia, and large sized joint effusion.  Tr. 538.  At a December

21, 2011, follow-up visit with Dr. Petty about Plaintiff's left knee, she

reported that knee pain had rendered her unable to walk for a few days.

Tr. 565.  Office notes from that date disclosed concerns that, due to her

arthritis, arthroscopy surgery may not be a reasonable consideration, but

total knee arthroplasty would also not be reasonable due to her young age

and her obesity.  Tr. 565.  Plaintiff was given a steroid injection.  *Id.*

On January 17, 2012, Plaintiff was evaluated for bariatric surgery at

the North Florida Regional Medical Center Surgical Group of Gainesville.

Tr. 594-609.  Those notes indicate that Plaintiff reported that she could get

in and out of bed, could climb stairs, bend, bathe, and wash her hair.  Tr.

603.  Plaintiff was referred for gastric banding surgery by Dr. Randy Brient,

M.D., on January 31, 2012.  Tr. 610.  It is noted that the bariatric surgery was performed in September 2012.  Tr. 1143.

A consultative clinical examination was requested by the Department of Disability Determinations and performed by Dr. Robert Greenberg, M.D. on May 9, 2012.  Tr. 630-33.  The report indicates that Plaintiff had a decreased range of motion (ROM) of the lumbar spine, both hips, and both knees.  Pain was present on ROM of the hips and knees.  Tr. 631.  Plaintiff walked with a slow gait and left leg limp, but did not require an assistive device.  *Id.*  She could not tandem walk or walk on heels or toes, nor could she stoop.  There was positive straight leg raising pain on the left at 30 degrees and decreased strength in both legs, measuring 4/5.  Dr. Greenberg diagnosed Plaintiff with severe low back pain and severe osteoarthritis of the hips and knees, both aggravated by morbid obesity.[3] *Id.*

On June 3, 2013, Plaintiff was given another consultative examination by Dr. Lance I. Chodosh, M.D.  Tr. 657-670.  Restriction in range of motion was noted.  Flexion of the spine was limited to 30 degrees, extension of the lumbar spine was limited to 5 degrees, lateral flexion was limited on the left

---

[3] The ALJ afforded no weight to Dr. Greenberg's findings for the stated reason that "he failed to offer an opinion [of functional limitations] to which weight can be assigned."  Tr. 19.

to 15 degrees.  Tr. 657.  Hip abduction was limited to 30 degrees

bilaterally, and adduction was limited to 0 degrees.  Tr. 658.  Dr. Chodosh

found that Plaintiff could never perform certain postural activities, including

climbing stairs and ramps, ladders and scaffolds, balancing, stooping,

kneeling, crouching or crawling.[4]  Tr. 663.  She could never lift 51 to 100

pounds but could occasionally lift 21 to 50 pounds, frequently lift 11 to 20

pounds and continuously lift up to 10 pounds.  Tr. 660.  Plaintiff could only

occasionally lift up to 20 pounds.  *Id.*  Dr. Chodosh opined that Plaintiff

could, with both hands, continuously perform all reaching, handling,

fingering, feeling, and pushing/pulling.  Tr. 663.  She could occasionally (up

to 1/3) operate foot controls with either foot.  *Id.*  Dr. Chodosh opined that

Plaintiff could shop, travel without assistance, ambulate without an

assistive device, use public transportation, prepare a simple meal, perform

self-care and sort, handle, and use papers or files.  Tr. 665.  Plaintiff could

not walk a block at a reasonable pace on a rough or uneven surface and

could not climb a few steps at a reasonable pace.  *Id.*  Plaintiff's weight at

the time of the examination was 318 pounds.  Tr. 668.

---

[4] The ALJ found this portion of Dr. Chodosh's evaluation unsupported by the treating physicians' records and progress notes which the ALJ found showed no evidence of complete preclusion from such basic postural movements.  Tr. 20.

In reaching his opinion in June 2013, Dr. Chodosh recognized that Plaintiff was generally independent, must sit to shower, has a grab bar in the shower, cannot walk more than a few hundred feet without rest due to pain, cannot stand for more than 15 to 30 minutes and cannot sit continuously for more than 30 minutes. Tr. 667. He opined that in an eight-hour workday, Plaintiff could sit for a total of six hours, stand for a total of one hour, and walk for a total of one hour. Tr. 661. Standing and walking without interruption were limited to ten minutes each. *Id.* Bending was said to be difficult and she was unable to squat. She drives occasionally, has corrected vision, and hearing loss that does not require hearing aids. Tr. 667. Impressions included severe obesity, chronic back pain, and chronic knee pain on the left side. Tr. 670.

Plaintiff was treated at 24th Century Medical Center for a lengthy period of time for left knee pain and low back pain. *See, e.g.*, Tr. 799-844; 885-930; 942-66; 1093-1145. Plaintiff consistently reported that her lower back pain was aggravated by bending and twisting. On March 19, 2012, she was seen by 24th Century for continued back pain and left knee pain. Tr. 613. Her gait was noted to be abnormal with a limp. *Id.* She was

diagnosed with "failed back" syndrome.[5]  *Id.*  On January 21, 2013, range of
motion was restricted and painful, with flexion limited to 45 degrees,
extension limited to 10 degrees, and lateral rotation to the left and right
limited to 20 degrees.  Tr. 843.  Notes from October 28, 2013, show range
of motion in her lumbar spine was limited to 50 degrees flexion, 15 degrees
extension, and 20 degrees lateral rotation to both left and right.  Tr. 801.
On December 23, 2014, range of motion was reported as flexion limited to
40 degrees, extension limited to 15 degrees and lateral rotation to the left
and right limited to 30 degrees.  Tr. 949.  Plaintiff's reports of constant back
and leg pain were consistent throughout her treatment at 24th Century
Medical Center.

Plaintiff saw Dr. Do continuously through 2013 and 2014 at 24th
Century Medical Center.  In September 2014, when seen by Dr. Do,
Plaintiff continued to have lower back pain and lower left leg pain.  Tr.
1142.  The doctor's notes indicate that relieving factors include application
of heat, exercise, and stretching, and motor and sensory deficits were
denied.  *Id.*  Dr. Do reported that an MRI of the lumbar spine showed
"significant" findings, including a bulging disc at L5-S1 and central fissure,

---

[5] Failed back syndrome refers to lumbar spinal or radicular pain after failed spinal
surgery. Merskey H, Bogduk N., Classification of Chronic Pain, at 179 (Second Edition
1994).

with post-laminectomy changes L3-L4.  Tr. 1143.  Plaintiff's gait was reported to be normal and that she ambulates without an assistive device.  Tr. 1144.  In January 2015, Dr. Do saw Plaintiff, who was reported to have continued lower back pain.  Again her ambulation was without assistive devise and gait was normal.  Tr. 1124.  Range of motion was restricted and painful with flexion limited to 40 degrees, extension limited to 15 degrees, and lateral rotation to the left and right limited to 30 degrees.  *Id.* Quadricep knee extension muscle strength was normal on both sides.  *Id.*

In August 2015, Dr. Do's notes indicate that Plaintiff's range of motion was restricted with flexion limited to 30 degrees, extension limited to 10 degrees, lateral rotation to the left limited to 10 degrees, and lateral rotation to the right limited to 30 degrees.  Tr. 1095.  Ambulation was still without device and gait was normal.  *Id.*  Spasm and tenderness were noted on examination of paravertebral muscles.  *Id.*  Dr. Do stated that relieving factors included heat, exercise, and stretching.  Tr. 1093.  The notes indicate that Plaintiff reported that the pain medications were effective with no side effects reported.  *Id.*  The lateral meniscus tear in Plaintiff's left knee was still present.  Tr. 1094.  Straight leg raise was negative.  Her diagnoses on that date included chronic pain, myospasm, sacroiliitis,

derangement of the posterior horn of the medial meniscus of the left knee, obesity, and postlaminectomy syndrome of lumbar region.  Tr. 1095.

## IV. Legal Standards Guiding Judicial Review

This Court must determine whether the Commissioner's decision is supported by substantial evidence in the record and premised upon correct legal principles.  42 U.S.C. § 405(g); Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986).  "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted); accord Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005).  "The Commissioner's factual findings are conclusive if supported by substantial evidence."  Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002) (citations omitted).[6]  The Court may not decide the facts anew, reweigh the

---

[6] "If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it."  Phillips v. Barnhart, 357 F.3d 1232, 1240, n.8 (11th Cir. 2004) (citations omitted).  "A 'substantial evidence' standard, however, does not permit a court to uphold the Secretary's decision by referring only to those parts of the record which support the ALJ.  A reviewing court must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ."  Tieniber v. Heckler, 720 F.2d 1251, 1253 (11th Cir. 1983). "Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.' "  Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981) (citations omitted).

evidence, or substitute its judgment for that of the Commissioner,

Bloodsworth, 703 F.2d at 1239, although the Court must scrutinize the

entire record, consider evidence detracting from the evidence on which the

Commissioner relied, and determine the reasonableness of the factual

findings.  Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992); Parker v.

Bowen, 793 F.2d 1177, 1180 (11th Cir. 1986).  Review is deferential, but

the reviewing court conducts what has been referred to as "an independent

review of the record."  Flynn v. Heckler, 768 F.2d 1273, 1273 (11th Cir.

1985).

A disability is defined as a physical or mental impairment of such

severity that the claimant is not only unable to do past relevant work, "but

cannot, considering his age, education, and work experience, engage in

any other kind of substantial gainful work which exists in the national

economy."  42 U.S.C. § 423(d)(2)(A).  A disability is an "inability to engage

in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or

which has lasted or can be expected to last for a continuous period of not

less than 12 months."  42 U.S.C. § 423(d)(1)(A); see 20 C.F.R. § 404.1509

(duration requirement).  Both the "impairment" and the "inability" must be

expected to last not less than 12 months.  Barnhart v. Walton, 535 U.S. 212

(2002).  In addition, an individual is entitled to disability insurance benefits if

she is under a disability prior to the expiration of her insured status.  *See* 42

U.S.C. § 423(a)(1)(A); <u>Moore</u>, 405 F.3d at 1211; <u>Torres v. Sec'y of Health</u>

<u>& Human Servs.</u>, 845 F.2d 1136, 1137-38 (1st Cir. 1988); <u>Cruz Rivera v.</u>

<u>Sec'y of Health & Human Servs.</u>, 818 F.2d 96, 97 (1st Cir. 1986).

The Commissioner analyzes a claim in five steps, pursuant to 20

C.F.R. § 404.1520(a)(4)(i)-(v):

1.  Is the individual currently engaged in substantial gainful
activity?

2.  Does the individual have any severe impairments?

3.  Does the individual have any severe impairments that meet
or equal those listed in Appendix 1 of 20 C.F.R. Part 404,
Subpart P?

4.  Does the individual have the residual functional capacity
(RFC) to perform work despite limitations and are there any
impairments which prevent past relevant work?[7]

---

[7] Residual functional capacity is the most a claimant can still do despite limitations.  20 C.F.R. § 404.1545(a)(1).  It is an assessment based upon all of the relevant evidence including the claimant's description of her limitations, observations by treating and examining physicians or other persons, and medical records.  *Id.*  The responsibility for determining claimant's RFC lies with the ALJ.  20 C.F.R. § 404.1546(c); *see* Social Security Ruling (SSR) 96-5p, 1996 SSR LEXIS 2, at *12 (July 2, 1996) ("The term "*residual functional capacity assessment*" describes an adjudicator's finding about the ability of an individual to perform work-related activities.  The assessment is based upon consideration of all relevant evidence in the case record, including medical evidence and relevant nonmedical evidence, such as observations of lay witnesses of an individual's apparent symptomatology, an individual's own statement of what he or she is able or unable to do, and many other factors that could help the adjudicator determine the most reasonable findings in light of all the evidence.").

5.  Do the individual's impairments prevent other work?

A positive finding at step one or a negative finding at step two results in disapproval of the application for benefits.  A positive finding at step three results in approval of the application for benefits.  At step four, the claimant bears the burden of establishing a severe impairment that precludes the performance of past relevant work.  Consideration is given to the assessment of the claimant's RFC and the claimant's past relevant work.  If the claimant can still do past relevant work, there will be a finding that the claimant is not disabled.  If the claimant carries this burden, however, the burden shifts to the Commissioner at step five to establish that despite the claimant's impairments, the claimant is able to perform other work available in significant numbers in the national economy in light of the claimant's RFC, age, education, and work experience.  *See* Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004); Jones v. Apfel, 190 F.3d 1224, 1228-29 (11th Cir. 1999); Chester, 792 F.2d at 131; MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986); 20 C.F.R. § 404.1520(a)(4)(v), (e) & (g).  If the Commissioner carries this burden, the claimant must prove that he or she cannot perform the work suggested by the Commissioner.  Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

Plaintiff bears the burden of proving that she is disabled, and consequently, is responsible for producing evidence in support of her claim. *See* 20 C.F.R. § 404.1512(a); Moore, 405 F.3d at 1211.  The responsibility of weighing the medical evidence and resolving any conflicts in the record rests with the ALJ.  *See* Battle v. Astrue, 243 F. App'x 514, 523 (11th Cir. 2007) (unpublished).

The opinion of the claimant's treating physician must be accorded considerable weight by the Commissioner unless good cause is shown to the contrary.  Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).  This is so because treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations."  20 C.F.R. § 404.1527(c)(2).[8]  "This requires a relationship of both duration and frequency."  Doyal v. Barnhart, 331 F.3d 758, 762 (10th Cir. 2003).

---

[8] This provision applies to claims filed before March 27, 2017.  For claims filed after that date, section 404.1520c, "How we consider and articulate medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017," applies.

The reasons for giving little weight to the opinion of the treating physician must be supported by substantial evidence, <u>Marbury v. Sullivan</u>, 957 F.2d 837, 841 (11th Cir. 1992), and must be clearly articulated. <u>Phillips</u>, 357 F.3d at 1241. "The Secretary must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." <u>MacGregor</u>, 786 F.2d at 1053.

The ALJ may discount the treating physician's opinion if good cause exists to do so. <u>Hillsman v. Bowen</u>, 804 F.2d 1179, 1181 (11th Cir. 1986). Good cause may be found when the opinion is "not bolstered by the evidence," the evidence "supported a contrary finding," the opinion is "conclusory or inconsistent with [the treating physician's] own medical records," the statement "contains no [supporting] clinical data or information," the opinion "is unsubstantiated by any clinical or laboratory findings," or the opinion "is not accompanied by objective medical evidence or is wholly conclusory." <u>Lewis</u>, 125 F.3d at 1440; <u>Edwards v. Sullivan</u>, 937 F.2d 580, 583-84 (11th Cir. 1991) (citing <u>Schnorr v. Bowen</u>, 816 F.2d 578, 582 (11th Cir. 1987)). Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight to the extent they are supported by clinical or laboratory findings and are consistent with

other evidence as to a claimant's impairments.  Wheeler v. Heckler, 784
F.2d 1073, 1075 (11th Cir. 1986).

Some opinions, on issues such as whether the claimant is unable to
work, the claimant's RFC, and the application of vocational factors, "are not
medical opinions, . . . but are, instead, opinions on issues reserved to the
Commissioner because they are administrative findings that are dispositive
of the case; i.e., that would direct the determination or decision of
disability."  20 C.F.R. § 404.1527(d); see Bell v. Bowen, 796 F.2d 1350,
1353-54 (11th Cir. 1986).  "[T]reating source opinions on issues reserved to
the Commissioner are never entitled to controlling weight or special
significance."  SSR 96-5p, 1996 SSR LEXIS 2, at *6 (1996).  Although
physicians' opinions about what a claimant can still do or the claimant's
restrictions are relevant evidence, such opinions are not determinative
because the ALJ has responsibility of assessing the claimant's RFC.  A
treating physician's opinion that a claimant is unable to work and is
necessarily disabled would not be entitled to any special weight or
deference.  The regulations expressly exclude such a disability opinion
from the definition of a medical opinion because it is an issue reserved to
the Commissioner and a medical source is not given "any special
significance" with respect to issues reserved to the Commissioner, such as

disability.  20 C.F.R. § 404.1527(d)(1), (3); SSR 96-5p, 1996 SSR LEXIS 2, at *6.  In Lewis, the court noted "that we are concerned here with the doctors' evaluations of [the claimant's] condition and the medical consequences thereof, not their opinion of the legal consequences of his condition.  Our focus is on the objective medical findings made by each doctor and their analysis based on those medical findings."  125 F.3d at 1440.

Generally, more weight is given to the opinion of a specialist "about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist."  20 C.F.R. § 404.1527(c)(2), (5)[9]; *see also* Benecke v. Barnhart, 379 F.3d 587, 594 n.4 (9th Cir. 2004) (noting that "[s]pecialized knowledge may be particularly important with respect to a disease such as fibromyalgia that is poorly understood within much of the medical community," thus rheumatologists' opinions were entitled to greater weight than those of other physicians) (Benecke quoted in Somogy v. Comm'r of Soc. Sec., 366 F. App'x 56, 65 n.13 (11th Cir. 2010) (unpublished)).  Although a claimant may provide a statement containing a treating physician's opinion of her remaining capabilities, the ALJ must evaluate such a statement in light of the other evidence presented and the

---

[9] *See* note 8, *supra*.

ALJ must make the ultimate determination of disability.  20 C.F.R.

§§ 404.1512, 404.1513, 404.1527, 404.1545.

## V. Analysis

Plaintiff contends that substantial evidence does not support the

ALJ's finding of Plaintiff's RFP because no examining or treating physician

stated Plaintiff could sit more than six hours a day and stand and walk

more than one hour a day.  ECF No. 17 at 36.  She further contends that

the ALJ's findings violate Social Security Ruling (SSR) 02-1p, regarding

evaluation of obesity, and the subjective pain standard set by the Eleventh

Circuit Court of Appeals.  *Id.*

### A.  Obesity

Despite bariatric surgery and weight loss efforts on Plaintiff's part,

she continued to weigh between 380 and 218 pounds.  On the date of the

hearing on September 4, 2015, Plaintiff reported a weight of 280 pounds.

Tr. 42.  SSR 02-1p, Evaluation of Obesity, reiterates that the Social

Security Administration considers obesity to be a medically determinable

impairment and reminds adjudicators to consider its effects when

evaluating disability.  *See* SSR 02-1p, Titles II and XVI: Evaluation of

Obesity, 2002 WL 31026506(F.R.) (2002).  This ruling recognizes that

obesity is a risk factor for other impairments, including diabetes,

osteoarthritis, sleep apnea, and vascular disease. *Id.* at § 2. The ruling calls for consideration of the claimant's weight over time, looking more at consistent patterns of obesity rather than periods of short term weight loss. *Id.* at § 4. Obesity is considered a severe impairment when it alone, or in combination with another medically determinable physical or mental impairment, significantly limits an individual's physical or mental ability to do basic work activities. *Id.* at § 6. Obesity may also be a factor in the ALJ's consideration of step 3, whether the claimant has an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at § 3. It is also a consideration in step 4. *Id.* The ruling states that "we will not make assumptions about the severity or functional effects of obesity combined with other impairments. Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment." *Id.* at § 7.

In this case, the ALJ found that Plaintiff has the following severe impairments: degenerative disc disease status post (s/p) laminectomy; osteoarthritis of the bilateral hips; osteoarthritis of bilateral knees; and morbid obesity s/p gastric banding. Tr. 13. These impairments were found to be reasonably expected to cause the Plaintiff's alleged symptoms. Tr.

16.  The ALJ noted in step 3 (finding 4) of the decision that no treating or examining physician reported findings similar in severity or equaling the criteria for any listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1, and further noting: "Additionally, pursuant to SSR 02-1p, obesity is considered a medically determinable impairment, and the combined effects of obesity with other impairment may be greater than considering each separately."  Tr. 14.  The ALJ stated that the effects of Plaintiff's obesity and other impairments "received such consideration in reviewing not only the objective evidence, but also the claimant's subjective complaints."  *Id.*  After making that consideration, the ALJ concluded that none of Plaintiff's impairments, including obesity and the combined effect of it, rose to the level necessary to meet the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *Id.*

The ALJ found obesity to be a severe impairment in step 2 (finding 3), considered the effect of it in step 3 (finding 4), and considered the Plaintiff's claims of disability secondary to severe impairments, including obesity, in step 4 (finding 5).  Tr. 13-15.  The ALJ specifically discussed Plaintiff's obesity in the RFC determination and noted that although Plaintiff has been successful in losing weight, her current weight of 280 pounds on her 5' 6" frame indicated a morbidly obese body habitus.  Tr. 16.

Based on the ALJ's consideration and discussion of Plaintiff's obesity, Plaintiff has not demonstrated that the ALJ failed to consider her obesity either as a separate severe impairment or in combination with other impairments found by the ALJ.  Thus, Plaintiff has not demonstrated that the ALJ incorrectly considered and evaluated the effect of her obesity in determining her severe impairments or their effect on her functionality.

**B. Dr. Chodosh**

Plaintiff also contends that as a matter of law the ALJ erred by reaching an independent medical opinion that contradicted Dr. Chodosh's opinion.  She characterizes Dr. Chodosh's opinion as one that concluded Plaintiff cannot work eight hours a day five days a week.  ECF No. 17 at 42. Plaintiff argues that Dr. Chodosh opined Plaintiff could "stand and/or walk for about one hour in an eight-hour workday; and she can sit for about six hours in an eight-hour workday. *Id.*  Plaintiff contends that the ALJ's RFC finding that Plaintiff can "sit for up to 6 hours and stand or walk for up to 1 hour each," Tr. 14, contradicts Dr. Chodosh and constitutes a substitution of the ALJ's "own uninformed medical evaluations" for that of the physicians.  ECF No. 17 at 42.

This contention lacks merit because Dr. Chodosh, in his report, concluded that in an eight-hour workday, Plaintiff could sit for a total of six

hours, stand for a total of one hour, and walk for a total of one hour.  Tr.

661.  Thus, Dr. Chodosh's opinion does account for a full eight-hour

workday.  Standing and walking without interruption were limited to ten

minutes each for standing and walking.  *Id.*  The ALJ, in concluding that the

medical evidence supported the finding that Plaintiff could sit for up to six

hours and stand or walk for up to one hour each in a normal eight-hour

workday, did not contradict Dr. Chodosh's opinion.  Tr. 14.

### C. Pain

Plaintiff contends that the ALJ, citing credibility issues, erroneously

rejected her testimony concerning the level and effect of her pain.  ECF No.

17 at 45-46.  The Eleventh Circuit adopted the following pain standard in

<u>Hand v. Heckler</u>, 761 F.2d 1545 (11th Cir. 1985):

> In order to establish a disability based on testimony of pain and
> other symptoms, the claimant must satisfy two parts of a three-
> part test showing: (1) evidence of an underlying medical
> condition; and (2) either (a) objective medical evidence
> confirming the severity of the alleged pain; or (b) that the
> objectively determined medical condition can reasonably be
> expected to give rise to the claimed pain.

*Id.* at 1548.  The Commissioner must articulate explicit and adequate

reasons for rejecting a claimant's allegations of pain, and the reasons must

be based on substantial evidence*.*  <u>Hale</u>, 831 F.2d at 1012.  "Reasonable

minds may differ as to whether objective medical impairments could

reasonably be expected to produce the [claimed] pain.  This determination

is a question of fact which, like all factual findings by the [Commissioner], is

subject only to limited review." <u>Hand</u>, 761 F.2d at 1548-49.  Where

substantial evidence in the record supports a clearly articulated credibility

finding, that finding should not be disturbed by a reviewing court.  <u>Foote v.</u>

<u>Chater</u>, 67 F.3d 1553, 1562 (11th Cir. 1995); <u>MacGregor</u>, 786 F.2d at 1054.

Title 20 C.F.R. § 404.1529 provides in pertinent part that there must

be "objective medical evidence from an acceptable medical source that

shows you have a medical impairment(s) which could reasonably be

expected to produce the pain or other symptoms alleged and that, when

considered with all of the other evidence (including statements about the

intensity and persistence of your pain or other symptoms which may

reasonably be accepted as consistent with the medical signs and

laboratory findings), would lead to a conclusion that you are disabled." 20

C.F.R. § 404.1529.

The ALJ in this case found as follows:

> After careful consideration of the evidence, the
> undersigned finds that the claimant's medically determinable
> impairments could reasonably be expected to cause the alleged
> symptoms; however, the claimant's statements concerning the
> intensity, persistence and limiting effects of these symptoms
> are not entirely credible for the reasons explained in this
> decision. . . .  [A]lthough the claimant testified she is unable to
> engage in even mild physical activities, the records repeatedly

shows (sic) the claimant engaging in light exercise such as walking, stretching, going to the gym, etc. (see, e.g., Exhibits 10F, 31F, 33F, 34F and 36F).

Tr. 16.  The ALJ further found that treating and examining medical sources have consistently recorded mild to moderate findings, and treatment records reflect largely normal musculoskeletal and neurological exams with no significant motor, sensory, or reflex deficits.  *Id.*  The ALJ cited medical evidence in the record to support the conclusions regarding the effect of Plaintiff's pain.  For instance, the ALJ cited the records of Dr. Do from August 2015, in which he reported that Plaintiff complained the pain was aggravated by bending and twisting, and that "relieving factors" included application of heat, exercise, and stretching.  Tr. 18 (referring to Exhibit 37F at Tr. 1093-1145).  The ALJ also cited Dr. Do's notes that Plaintiff denied any motor or sensory deficits, no adverse effects from prescribed medication, and no new symptoms.  *Id.*

Although the Plaintiff consistently reported her back and knee pain to her treating and examining physicians, and specified on several occasions that standing, walking, and sitting for any sustained periods of time caused a great deal of pain, the ALJ did identify portions of the medical record that support the conclusion that Plaintiff's impairments and her resulting pain do not render her disabled.  It is within the ALJ's "realm of judging" to

determine whether "the quantum of [symptoms a claimant] allege[s][is] credible when considered in the light of other evidence." <u>Arnold v. Heckler</u>, 732 F.2d 881, 884 (11th Cir.1984). "The question is not . . . whether ALJ could have reasonably credited [Plaintiff's] testimony, but whether the ALJ was clearly wrong to discredit it." <u>Werner v. Comm'r of Soc. Sec.</u>, 421 F. App'x 935, 938-39 (11th Cir. 2011) (unpublished) (holding the ALJ did not err in finding Plaintiff not entirely credible as to allegations of pain and functional limitations). The ALJ need not specifically refer to every piece of evidence, but the explanation cannot be a "broad rejection which is 'not enough to enable [the district court or this Court] to conclude that [the ALJ] considered [claimant's] medical condition as a whole.' " <u>Dyer v. Barnhart</u>, 395 F.3d 1206, 1210-11 (11th Cir. 2005) (quoting <u>Foote</u>, 67 F.3d at 1561 (quoting <u>Jamison v. Bowen</u>, 814 F.2d 585, 588-89 (11th Cir. 1987)).

Substantial evidence cited by the ALJ supports the adverse credibility determination as it related to the intensity, persistence, and limiting effects of the Plaintiff's obesity. Further, the limitations stated in the RFC as recommended by Dr. Chodosh account for Plaintiff's inability to sit, stand, or walk for any sustained period of time due to pain, and the vocational expert identified several representative jobs available in significant

numbers in the national economy that could accommodate those

limitations.

## VI. Conclusion

Considering the record as a whole, the findings of the ALJ are based

upon substantial evidence in the record and the ALJ correctly followed the

law. Accordingly, pursuant to 42 U.S.C § 405(g), it is respectfully

recommended that the decision of the Commissioner to deny Plaintiff's

applications for Social Security benefits should be **AFFIRMED.**

**IN CHAMBERS** at Tallahassee, Florida, on October 12, 2017.

**s/ Charles A. Stampelos**
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2). A copy of the objections shall be served upon all other parties. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b)(2). Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a Report and Recommendation, that party waives the right to challenge**

on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.